There we are. The last case on our argument calendar this morning is Owner-Operator Independent Drivers Association v. Swift Transportation, and we've set it for 20 minutes per side. When you're ready. May it please the Court, my name is Daniel Unum, and I represent the plaintiffs, Owner-Operator truck drivers who lease their trucks and driving services to regulated motor carriers who provide freight services. I'd like to, excuse me, reserve three minutes for rebuttal. Plaintiffs have appealed the district court's denial of their motion for preliminary injunction, which sought to require defendants to comply with the law governing their operations. Regulated motor carriers are prohibited by federal law from offering transportation services in equipment they do not own unless there is a written lease containing the requirements set forth in 49 CFR 376.12 of the Truth in Leasing Regulations. There are no exceptions to this flat ban. The enforcement of the Truth in Leasing Regulations was originally the responsibility of the ICC, which had plenary authority over motor carriers operating authority and could impose various terms and conditions on that authority. In connection with the ICC Termination Act, Congress deliberately decided to continue the requirements of the Truth in Leasing Regulations. However, to move to a system of primarily private enforcement, and in connection with that mechanism of enforcement, they specifically adopted a right to injunctive relief. As held by this Court in Burlington Northern, as well as the Eighth Circuit in the Bair case, and as indicated by the Supreme Court's opinion in T.V. Hill, where their injunctive relief has been granted to enforce a flat ban on specific conduct, that the traditional panoply of equitable discretion that adheres in courts is limited, and that injunction should issue if there is reasonable cause to believe that a violation has occurred. In particular, there is no requirement of an evidentiary showing of irreparable harm because the promulgation of the ban itself involved a weighing and balancing of the equities. But where does the reasonable cause standard come from? I'm looking at the statute, I guess it's 14704A1, where it says a person may bring a civil action for injunctive relief. But how do I know from looking at the statute that all you need to establish is reasonable cause in order to require a Federal district court to issue the injunction? Well, the actual terminology of reasonable cause was used in the line of cases as represented by the Burlington Northern case in this Court. As to what's the different statute, wasn't it? Yes, but the statute in that case, I don't believe, had the terminology of reasonable cause. But didn't it have more mandatory language with regard to shall issue injunctive relief? I believe that the statute in that case, Your Honor, indicated that the court had jurisdiction to enter an injunction to prevent violations, but there was no shall-type language in that. And in that regard, the fact that the statute in this case says may, it says may with regard to the plaintiffs who may bring an action. That goes to the discretion, if you will, that is accorded to any plaintiff to determine whether or not to bring an action in the first instance. It does not go to discretion that would be afforded to the court. In fact, that exact same language, that may bring an action for injunctive relief, was present in the TVA v. Hill case under 13 – I don't have the exact cite, but it was the exact same language as cited in our brief. So the question becomes where – and the other facet of your question, Your Honor, that I'd like to address is the – that to a certain extent, the reasonable cause standard goes to the determination of the violation aspect, has a violation occurred. But it seems to me in reading TVA v. Hill that Chief Justice Berger was very careful to point out that the Endangered Species Act, which was an issue in that case, basically placed an affirmative duty on Federal courts to issue injunctive relief in order to protect the species from extinction, and that that's a very different case here where it seems to me the normal rules appertaining to injunctions, the Rule 65 standards, would otherwise apply and you'd have to show the four factors. Well, Your Honor, I believe that the ban at issue and the flat ban, and that's what the court in TVA v. Hill predicated so much of its analysis on, was not in the granting of injunctive relief or how it couched the ability to award injunctive relief. It was actually in the statute and the history and the structure of the enforcement scheme that indicated that agencies should not engage in any activity that would result in a elimination of the habitat of an endangered species. So the ban in that case went to the actual conduct being prohibited. And in light of that ban, in light of the fact that Congress had specifically indicated that this activity by agencies must be prohibited and we cannot countenance anything that will destroy the habitat, that is what gave rise to the decision that, faced with that sort of a ban, the district court could not take any action that would be inconsistent with that ban, because that's what Congress intended. But isn't there a difference when we're talking about the protection of a species which is listed by the Fish and Wildlife Service as threatened or endangered and for which there is absolutely no other alternative? Either we issue the injunction and prevent the dam from being built, which otherwise destroys the habitat for the snail darter. In this case, which is essentially, as I understand your reasonable cause argument, a strict liability situation where if the lease doesn't contain every single nuance, no matter how minor or technical, then you're entitled to injunctive relief. Why isn't damages appropriate in order to ensure compliance with the statute? Well, Your Honor, as this Court indicated in the Odessa Warehouse case, where a statute allows for an injunction, excuse me, and where the requirements have been met for the issuance of that injunction, where the violation has been established, then irreparable harm is presumed, because it was the ability of Congress or the agency to whom the responsibility had been delegated. Irreparable harm is presumed with regard to whom? To your argument has to be that there's no other method that could compensate the independent operators for the violation. I can understand it in the TVA context, because we can't compensate the loss of the snail darter with money. The only way to preserve the species is to stop the dam from being built. But I don't see that that analogy carries to this situation. Well, Your Honor, I believe that it does carry because there is still a flat prohibition on the conduct. This was something that the ICC had promulgated as part of the carrier's operating authority. The carrier was specifically prescribed from operating without these requirements. And Congress, in moving to a system of private enforcement, gave no indication that it intended any less of a requirement imposed on the motor carriers. In terms of the potential harms that may occur, there's any number of inchoate or difficult-to-quantify harms that could be attendant to not having these required provisions in the lease. The driver's ability to know whether he should enter into the lease in the first instance, whether the – what his rights and responsibilities will be, whether or not he will have any ability to vindicate those rights in a small claims court, in a contract action, when those rights are not in the lease. All of those kinds of factors that might lead to damages that would be very difficult to quantify on an individual basis would be – were going into why the ICC adopted these regulations in the first instance, which was the result of a tremendous battle back and forth – or battle, perhaps the wrong word – but an exchange where the ICC looked to all facets of the transportation industry to determine what did it view be necessary to have in the lease, consistent with a sound national transportation system, at a very broad policy level. That decision was made and the determination was made as to what the particular requirements ought to be that should be in that lease. And that battle was fought and those equities were balanced at that time. Why can't he just go to a different carrier? In other words, contract his services to somebody who will comply with the statute. Well, in effect, and that's what the enforcement regime, which is set up to guarantee that all contractors have these requirements, which is why there's a flat ban on operating without them, becomes a matter of catch-as-can. It becomes a matter of is the plaintiff savvy enough to bring a lawsuit? Is the plaintiff – does he even realize that his rights have been violated? Is the carrier, in fact, going to ultimately be able to financially compensate for damages? How many drivers – and in this injury there's tremendous driver turnover – are going to even become aware of these risks? This may be a kind of rough cut at the problem, but I'm trying to think about it this way for just a moment. I can well understand that a statute might set up a presumption of irreparable harm in certain circumstances where, for example, under the Endangered Species Act, you can see that the irreparable harm may well be, as soon as you put that dam forward and sue for damages, well, the irreparable harm is going to be the extinction or further endangerment of the endangered species. So I can see there is a practical matter that is not a silly thing for the Court to say, you know, I think the statute drafters intended for us to assume that there was irreparable harm in all cases brought under the statute. Why is that assumption, just as a practical matter, a proper assumption here? Why in basically all cases brought under this statute, or not even basically eliminated under your argument, why in all cases under this statute as a practical matter do we presume or should we presume irreparable harm? Well, first ---- And what is the nature of the harm and why is it irreparable? Yes, Your Honor. The harm is, as I've stated, failing to comply with the terms of the operating plan. Oh, that's the failure of the duty. What's the harm? The harm that can be sustained as a result of that is immense and manifold, Your  Honor. The harm is as reflected in the rulemaking proceedings whereby they specifically consider the various types that may occur. Owner-operators in this industry have very little bargaining power. That was the whole impetus behind the adoption of these securities and the truth in leasing regulations in the first instance, is that they don't have an ability to negotiate for changes. They don't have an ability to enforce through negotiation the requirements of the truth in leasing regulations. And that circumstance is set forth and is replete in the background to the adoption plan. I'm sorry. Well, why wouldn't suits for damages remedy any of that? As I've indicated, the ICC intended that this be part of the operating authority precisely because the damages would not be an effective vehicle to ensure the deterrent effect of having an absolute requirement as the ICC had and as it was able to enforce through its control over the carrier's operating authority is tremendously efficacious and effective to guarantee a level playing field throughout the country with regard to these leases. If the leases may differ and when we're left to a remedy of damages, which may or may not be ultimately obtainable by an individual plaintiff, then the industry itself can be undercut. There's tremendous economic problems if we have some people playing by the rules and others not playing by the rules. So the rules were established. It is the violation of the rules themselves. And I would point out that even in the cases that talk about the reasonable cause standard, such as the NLRA cases, and have said, well, in this particular case, because the language is not present, however, in that case, what was significant to the Court was it was present in another part of the statute and not another, so therefore, that was the statutory interpretation. The Court still applied the presumption of irreparable harm as a basic feature when enforcing an obligation that has arrived as a result of this deliberate and considered weighing and balancing the equities by Congress and or administrative agencies who have been given this requirement. In fact, that's exactly what happened in the Richland case, which involved the FDA's good manufacturing practice regulations. Statutory injunction standards were applied in that case to the violation of the good manufacturing process regulations, which governed the specific requirements and written procedures that a manufacturer had to have in their operating guidelines. What would the injunction say if you got what you wanted? The injunction would say, as I would point the Court to the case of LIDAR, Owner Operators v. LIDAR, the Western District of Missouri, which had this exact circumstance in which ordered an injunction in these same cases. And the Court in LIDAR ordered that the defendant comply with the requirements to have a lease meeting the requirements of 376.12. It was prohibited from operating without such a lease. Now, I would also caution and like to point out that this is not a case. First off, there has to be a determination that there's a violation. And it may be that there is something in the lease that is arguably it complies or it doesn't, but the Court makes that decision based on a textual analysis of the lease and the regs. So there's this ---- It goes through the LIDAR case. I mean, it looked to me like the judge basically, and it's replete throughout the opinion, basically cites to the CFR provision, says, I don't see anything in the lease that discusses that. Therefore, the lease is in violation of the regulations, and it's illegal. Well, I think ---- That's not much of a ---- of an evaluation. Because the requirements are so clear. It is crystal clear. The requirements are so clear, or because he bought your argument that reasonable cause is all you need to show. It's easy if reasonable cause is the only standard. Well, even if we assume that it's not reasonable cause, Your Honor, even if we assume that it is the higher standard, as one of the NRA cases discusses, which is success on the merits, tremendous success on the merits, where the regulations state you must have these provisions in your lease, that is not a difficult exercise. It is a legal exercise, the application of Federal regulations to preexisting legal documents. It's a straightforward test. Now, we ---- The 49 CFR section 376.12k4 talks about the right to demand an accounting involving escrow funds that the carrier controls. Why isn't the normal equitable relief of an action for an accounting a sufficient remedy to address that violation if that's really a problem? Because, Your Honor, the ---- those equities were weighed and balanced, I can't stress that enough, by the ICC in coming to that determination. That had to be in the lease. For all the reasons that informed the regulatory and legislative history, that had to be in the lease because of the types of violations that they had seen over time. But that doesn't answer, I guess, Judge Fletcher's question about how does that represent a weighing of irreparable harm. I mean, an action for an accounting is a fairly straightforward equitable remedy to address a problem with money that is otherwise due and owing the plaintiff. But what will happen is if we leave this to an individual damage remedy, then there will be no requirement. The ban ---- the ban, which states that you cannot operate in interstate commerce without a lease with these requirements, no longer means that. What it means is that motor carriers can operate in interstate commerce with nonconforming leases, provided they're willing to pay damages. And the damages could be set pretty high, couldn't they? I mean, there's no restriction on what the district court could impose by way of damages. But it is still a rewriting of the law, Your Honor, a rewriting of the law. A rewriting of the law or a rewriting of the remedy? I would say it is a rewriting of the law because the law conditions. You look at the exact language of the prohibition, you cannot move freight absent this requirement. That is what the law specifies. And it's that kind of prohibition that gives rise to this. Let me have another ---- let me hear another argument, which is to say I might be more inclined to hold for you if damages are meaningless. I mean, what's the measure of damages going to be if you go to damages? There will be various damages, for example, in terms of illegal chargebacks, chargebacks that were made and not disclosed to drivers. But, again, there are other ---- this is why there is injunctive relief for not having terms in the lease, is that to take the example of a failure to have an accounting, a driver may never know about that. It's hard to quantify what that damage may be. A driver, for example, may not know that he has a right to certain documents, which may help him in the case of an accident, an insurance accident, to know whether or not that he is entitled to certain insurance coverages. These kinds of damages may never be able to be ---- Are penitent damages available under the statute? No, Your Honor. Right. Is it statutorily prohibited under the ---- I don't think that they're prohibited, Your Honor. Then how do we know they're not available under the statute? If they're not prohibited, how do we know they're not available? Well, let me rephrase. I am not aware that they're prohibited under the statute, Your Honor. You said they are prohibited. I'm having trouble hearing, so ---- Yes, and I'm rephrasing and taking back that answer. There is no explicit prohibition on them. Okay. So they might be available? Depending on the requirements. However, as I stress again, the types of harms that can occur as a result of not having this lease range because by not having that lease, there may be ---- the driver may be unaware of remedies. Also, by limiting it to a damage remedy, then a carrier can pick and choose. It can decide to operate in interstate commerce without having a conforming lease, and it is only subject to those few instances when someone decides, I'm going to bring a lawsuit, I get damages. Well, let's hear from the other side, and we'll give you a minute in response. Thank you. May I please have the Court? Good morning, Your Honors. Richard Paul on behalf of the Applee's, Applee Swift Transportation Company, which I'll be making the substantive arguments on behalf of today. Also appearing on behalf of Applee, MS Carriers, Inc., to object to the Court's jurisdiction. I raised in the jurisdictional statement in the brief that we had a pending motion to compel arbitration. Since briefing has been completed really just recently, the district court granted the motion to compel arbitration as to the plaintiff's claims against defendant MS Carriers, Inc. That is currently subject to the plaintiff's motion to alter or amend that order, but assuming that the district court's order remains the same, we would contest the jurisdiction over MS Carriers. But you do not challenge jurisdiction over Swift? That's correct, Your Honor. And the legal issues are the same. The factual issues would differ, but the legal analysis is the same. Your Honors, the primary substantive issue, of course, is whether the district court is mandated in all instances to grant or enjoin violations of the truth and lies statute. Can I ask you a question with which I more or less ended, and that is, what's the nature of the damage suit that might follow? Well, there are various, depending on which of the subsections of 376.12 would allege to be violated, and in response and further answer to the Court's question of my opposing counsel, in some of those subsections, the damages would be very clear and easy to recompense and recover. In others, they may be more difficult than an injunction. Are we talking about large damages or basically nominal damages? I mean, what kinds of things are we likely to anticipate, likely to get? I'm sorry. In this case, the plaintiffs, I think, would be seeking both. There are particular claims and particular deficiencies that they allege, which we claim would only result in nominal damages if their arguments were correct. There are other claims where if they succeeded on those claims, there would be more substantial damages. Give me an example of a claim that might produce substantial damages, if successful. There is a claim with respect to the purchase of fuel in this case. The evidence is not on the record, so consider it a hypothetical. Yeah. As the evidence may develop in this case, the fuel that is available for purchase to owner-operators at Swift's terminals around the country is priced on a daily basis at each terminal based on the rack price at which they purchase it and some of the surrounding gas stations. So if the rack price is $1.19 and they impose some administrative fee to recover their costs in administering the program to owner-operators of, say, $0.02 to take it to $1.21, but local stations are $1.22, they might lower it down to $1.20. That administrative fee is being contested by the plaintiffs, and that administrative fee could add up over all purchases with all owner-operators. And it's being contested because, in their view, you can't put that into a lease or because it's not disclosed? They say the administrative fee itself is not disclosed, and the manner in which it's calculated is not disclosed. I see. And because it's not disclosed, cannot be charged. That's their argument. Okay. And on a class action, $0.02 pretty soon is going to add up to some money. Okay. I got it. What was the nature of enforcement by the Interstate Commerce Commission? Did they enjoin violations of particular sections, or did they issue cease-and-desist orders which said you just have to comply with this whole statute? Or what did they do? They did have the power to issue injunctions and to issue cease-and-desist orders. And there are cases cited in our brief. This gets to the standard, but that where they applied the substantial compliance standard of whether evaluating whether there was harm to the owner-operators or whether there really wasn't any harm in exercising their discretion of whether an injunction was appropriate. But they did, in fact, have that power. The framework in which all this is the question should be analyzed. Well, can I follow on Judge Canopy's question? Is the current standard for violation a substantial compliance standard? That is another dispute that the district court didn't reach because of the argument made by the plaintiffs. But their argument is the flat band. Our argument supported by ICC cases and other cases in our brief is substantial compliance. Okay. But if the standard is substantial compliance, that means that trivial violations are simply overlooked and they are not, in the end, actionable violations, which means then that only serious violations under even your view of the case are at issue. If it's a serious violation, that is to say it's a substantive, it's not a trivial one, that seems to me to increase the argument for presumption of in favor of an injunction. Well, I think the issue is that's for the district court to weigh in its discretion. If monetary damages are to be availed to the district court. No, I'm making a different point. I'm trying to figure out, as we all are, whether or not there should be a presumption of irreparable harm. We should read the statute for the reasonable cause and so on. And if you're telling me that the standard of liability under the statute is you can only be liable for a violation if there's been some substantial breach, that begins to suggest to me, well, if that's the case, maybe there should be presumed harm. Let me try and separate that, Your Honor, because I think there's two points in there. The presumption of irreparable harm, the cases that the plaintiffs rely on to make that argument, are government enforcement actions. And the cases make that distinction, saying that private litigants are not entitled to that presumption. Is the government now entirely without power to enforce now that the ICC is gone? They're not. No, they're not without power to regulate the carriers. But the private disputes between owner-operators and the carriers have been, under the prime decision, relegated to the court system. After a different, more precise question, I didn't answer mine. If the government were to want an injunction against you based upon the violations that are alleged here, could the government get an injunction against you? And I don't know the answer to that. I apologize, Your Honor. I don't think so. I think this type of dispute has been relegated to disputes. That is to say, I'm looking at the successor to the ICC? That is, yes. Is that right? I thought that the ICC's enforcement authority was simply transferred to the Department of Transportation. In a sense, it is, because the carriers still have to have a certificate of authority to transport freight. And so there is continuing regulation and oversight. It's just that the disputes over the leases have been transferred to the parties. But to answer Judge Fletcher's question, doesn't the DOT still have the authority to seek the same sort of remedies that the ICC could seek if it decides in its prosecutorial discretion to come after SWIFT? And that's the answer I don't know. I just don't know the answer to that. I apologize. Your answer is, I hope not? We'll argue that when we come to it. The answer is, they haven't done it, have they? I mean we've not seen that in this area. But I thought your view is that this kind of dispute has been left for private initiative to the parties. Well, we made the argument in another case in which we have several of these cases going on against each other, and we've made the argument in the prime case that the Federal Highway Administration ought to be governing these disputes, and we lost that battle. We regroup and go from there. But the reason I think this might be relevant, controlling, I don't know, but relevant, is in a sense it's a variation on the argument about substantial compliance. I mean, if all we have is a suit that allows liability, that finds liability for lack of substantial compliance, and if all we have is a successor to the injunctive power that the government used to have as the private parties, I'm getting closer and closer to think that maybe the proper reading of the statute is more favorable to the grant of the injunction than just an ordinary equitable discretion standard. Why am I wrong in so thinking? If I could, I'd like to go back and establish the framework under which I think that the law says we're supposed to look at these issues, and that is the Supreme Court's decision in Weinberger v. Romero-Barcello, which sets forth two circumstances in which the reasonable cause exception could apply. The first is, if the statute explicitly says so, and the only example that I found of that was the Section 10L of the National Labor Relations Act, where it specifically says in the statute that the reasonable cause standard applies. The other area or category of cases where the reasonable cause standard could apply is where the Court, what the Court phrased as a necessary and inescapable inference that the reasonable cause standard applies. And that's what the Romero-Barcello case was about, is what does that language mean, necessary and inescapable inference? And what it held was, if there are alternative remedies, that inference does not exist. But where Congress has provided one remedy and only one remedy, that being injunctive relief, that necessary and inescapable inference exists, and I think the practical view of that is, if there's only one remedy and the Court denies it, by definition there is irreparable harm. And that encompasses the TVA v. Hill case where there was no alternative remedy. The only remedy available under the Endangered Species Act was an injunction, and there was no way to compensate the general public for the elimination of an entire species of fish from the face of the earth. The same argument applies to the Railroad Revitalization and Regulatory Reform Act cases, where at least one of the cases says the injunction statute was passed because there was no adequate remedy for these railroad companies to get their tax revenues back once they had been paid to the government. And so the injunction was mandatory because there wasn't any way to get the money back once it was paid. The other issue that they looked at there in those cases under the Railroad Act is that the language of that statute does differ from the statute under the Truth in Lacing Act, because it focuses on the power of the district court, not on the power of the plaintiff. And while it says the district court may enjoin under the Railroad Act, it is a conference of jurisdiction, because the Tax Injunction Act would otherwise prohibit a court from enjoining the assessment of a tax. And so Congress specifically gave the courts jurisdiction to enjoin a tax, which it otherwise didn't have. And the courts have analyzed that and said that is the necessary and inescapable inference that injunction is the proper remedy, because there is no other remedy. This may be an unfair question, but why isn't it easier to comply than to defend a lawsuit? I mean, so. Well, we haven't gotten to that stage yet. We'd like to get to that stage. You'd like to get to the stage where you could comply? No. We'd like to get to the stage where we could present the evidence. The substantial compliance argument entails more than substantially complying with the regulation. Our argument is we don't just provide the drivers with the lease. We provide them with a packet of information where all of these disclosures are in fact made and there aren't any hidden. Your answer is you have complied, I guess. Is that basically what you're saying? I'm sorry, Your Honor. Your answer is that you have complied. Is that what you're saying? That is absolutely right. And that remains to be tried or something. That's where we want to get to the evidentiary stage so we can present the evidence of our compliance. The other distinction that's raised in the Romero-Barcello case in terms of the framework of analyzing this reasonable cause standard is whether the denial of an injunction would essentially nullify the act. And I think the language goes something about going to the purpose or heart of the act. And it gives the examples where, for example, the Hill case where eliminating the snail darter would nullify Congress's act in the Endangered Species Act if the injunction wasn't granted. And here that's not the case. In addition to the fact that there are other claims available, other remedies available, such as a claim for damages, which the claimants have brought and are pursuing. But as you say, some of the damages probably aren't going to be available under some of the sections, and they get kind of written into a dead letter by the absence of any easy injunctive remedy. Or maybe the answer is that you could get injunctions for those sections. Well, that may very well be the result, if we were to lose these arguments, that the Court would find both injunctive relief and monetary relief would be appropriate. But again, that goes back to the Court's discretion in determining whether monetary relief is indeed an adequate remedy. And I don't think that this record supports the fact that monetary relief is not an adequate remedy, because certainly in some of the allegations that they've made, there isn't any question that monetary relief is an adequate remedy. And the district court made that finding. Well, my understanding of the posture of the case is the only issue before us is whether the reasonable cause standard applies. We haven't gotten to your irreparable injury. It was never addressed so far. Is that correct? The plaintiff never made the argument that irreparable harm existed. So it was not an issue that was addressed by the district court. The district court found that he didn't have any proof or evidence of irreparable harm and under the four-factor test denied the injunction. The argument just wasn't made. Thank you, Your Honor. Okay. Thank you very much. You didn't save, but we saved for you a minute. Would you like it? Okay. Your Honor, there is no indication that the ICC could not enforce this ban without first determining that irreparable harm would occur. And it is clear that Congress intended to have the same level of enforcement when it accorded this to private parties. The damage and the irreparable harm at issue here are the same. Were you saying that the ICC could have brought, either through a cease and desist or a compliance action, injunctive relief on these facts? Yes, Your Honor. Okay. But what? And would have done so automatically based on your reasonable cause standard? That, as has been pointed out, that we are essentially the successor to the ICC, and the question is to get the proper level of enforcement that we should be able to proceed along similar lines. But didn't the ICC also routinely issue penalties to motor carriers that failed to comply with the Truth in Leasing Act provisions? Wasn't that also a remedy that was available to the agency? It was both, Your Honor. And the ---- So they could choose to seek injunctive relief, but did not in every case, right? Depending on what the nature of the violation was, whether it was a conduct violation or a lease violation. There are two different types of lease violations and with ---- or type of truth in leasing regulation violations. And with respect to the violation of the lease writing regulations, if you will, the essence and the irreparable harm that is entailed with respect to this is that it is a truth in leasing statute. It is ---- involves disclosure. And the failure to disclose, and this is what the background in the history indicates, it is the failure to disclose which results in irreparable harm. These drivers do not have this information. They are not educated. They are not sophisticated. If this is not in the lease, they never even learn of the rights that have passed them by, the rights that they should have had that would give rise even to a lawsuit. Lawsuit after lawsuit will pass. Carrier after carrier can continue to operate without conforming leases because it is a disclosure regime. If the lease does not indicate, for example, the correct insurance policy or the nature of an insurance policy that a driver may have, that driver gets into an accident. He's sued by a third party. All of a sudden now he finds out his insurance policy is no good. That's completely different litigation that he's now embroiled in. If he doesn't know the compensation that he will accrue, he gets into a situation where he is not aware of what his rights are. If he doesn't know that he has a right to require certain documentation, he never requires the documentation. He never even seeks it because he's not been told about it. So damage after untold damage can accrue because it is a disclosure regime. And when that disclosure does not occur, there is untold and irreparable harms that are attendant to that, which is precisely why this was required to be in the lease. Roberts. Okay. Thank you. Thank you very much. A very helpful argument from both sides. Thank you both. The case of Owner-Operator Independent Drivers Association v. Swift Complication is now submitted. That's the last case on our calendar for this morning. We will resume tomorrow morning, but we now stand in recess.
judges: Canby, W. Fletcher, Tallman